1                     UNITED STATES OF AMERICA
                    UNITED STATES DISTRICT COURT
2                    MIDDLE DISTRICT OF FLORIDA
                        TAMPA DIVISION
3                           - - -
4                 HONORABLE RICHARD A. LAZZARA
             UNITED STATES DISTRICT JUDGE PRESIDING
5                         - - -

6  UNITED STATES OF AMERICA,  )
                            )
7          PLAINTIFF,       )
                            )
8  VS.                   ) NO. 8:13-CR-442-T-26MAP
                            )
9  KEOSHA RENEE JONES,       )
                            )
10        DEFENDANT.       )
   _____)
11

12                      **BOND HEARING**
13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS
                  JANUARY 23, 2014
15                   TAMPA, FLORIDA

16

17        MELISSA A. PIERSON, CA/CSR 12499,
               IL/CSR 084.003138, RPR
18         FEDERAL OFFICIAL COURT REPORTER
         801 N. FLORIDA AVENUE, 2ND FLOOR
19          TAMPA, FLORIDA 33602
           PH:  (813)301-5336
20         USDCTRANSCRIPTS@GMAIL.COM

21

22

23

24

25

1    APPEARANCES OF COUNSEL:

2    ON BEHALF OF PLAINTIFF:
              A. LEE BENTLEY, III
3             UNITED STATES ATTORNEY
              BY:  MR. JOSEPH SWANSON, ESQ.
4             ASSISTANT UNITED STATES ATTORNEYS
              400 N. TAMPA STREET
5             ST. 3200
              TAMPA, FL 33602
6             (813) 274-6000
              JOSEPH.SWANSON@USDOJ.GOV
7

8    ON BEHALF OF DEFENDANT:
              MR. KEVIN BECK, ESQ.
9             259 FOURTH AVENUE NORTH
              ST. PETERSBURG, FL 33702
10            (727) 204-3199
              KEVINTBECK@HOTMAIL.COM
11

12   MS. DAIA JUNG, PRETRIAL

13   MS. TRACEY SHROYER, US PROBATION

14

15

16

17

18

19

20

21

22

23

24

25

1          TAMPA, FLORIDA; THURSDAY, JANUARY 23, 2014

2                          - - -

3          (COURT IN SESSION AT 10:00 A.M.)

4          MADAM CLERK:  CASE NO. 8:13-CR-442-T-26MAP, UNITED

5    STATES OF AMERICA VERSUS KEOSHA RENEE JONES.  COUNSEL, PLEASE

6    STATE YOUR APPEARANCES.

7          MR. SWANSON:  GOOD MORNING, YOUR HONOR.  JOSEPH

8    SWANSON FOR THE UNITED STATES, AND I AM JOINED TODAY BY FBI

9    SPECIAL AGENT WILLIAM JONES.

10          THE COURT:  GOOD MORNING.

11          MR. BECK:  GOOD MORNING, YOUR HONOR.  KEVIN BECK ON

12    BEHALF OF MS. JONES.

13          THE COURT:  MS. JONES, WOULD YOU STAND AND PLEASE

14    BE SWORN BY THE CLERK.

15          (DEFENDANT SWORN.)

16          THE COURT:  HAVE A SEAT PLEASE AND SPEAK INTO THE

17    MIKE.  YOU ARE KEOSHA RENEE JONES?

18          THE DEFENDANT:  YES, SIR.

19          THE COURT:  AS YOU KNOW WE HAD SCHEDULED A

20    SENTENCING HEARING LAST WEEK AND I CONTINUED IT UNTIL TODAY

21    TO DETERMINE WHETHER I SHOULD RELEASE YOU ON CERTAIN

22    CONDITIONS.  IN THAT REGARD THE UNITED STATES PRETRIAL

23    SERVICES OFFICER HAS GIVEN ME A REPORT ON THE DATE OF

24    JANUARY 22ND.

25          DURING THE COURSE OF THIS PROCEEDING YOU MAY BE

1    ASKED A QUESTION.  IF YOU ARE ASKED A QUESTION AND CHOOSE TO

2    ANSWER, DO I HAVE YOUR ASSURANCE YOU WILL ANSWER ALL

3    QUESTIONS TRUTHFULLY AND COMPLETELY?

4          THE DEFENDANT:  YES, SIR.

5          THE COURT:  MR. SWANSON, HAVE YOU HAD A CHANCE TO

6    CONTACT THE VICTIMS IN THIS CASE?

7          MR. SWANSON:  YES, YOUR HONOR.

8          THE COURT:  HOW OLD ARE THEY AGAIN?

9          MR. SWANSON:  THEY ARE CURRENTLY 15, YOUR HONOR.

10         THE COURT:  DO THEY LIVE WITH THEIR PARENTS?

11         MR. SWANSON:  YES.

12         THE COURT:  YOU CONTACTED THE PARENTS ALSO?

13         MR. SWANSON:  YES, SIR.

14         THE COURT:  WHAT'S THEIR POSITION?

15         MR. SWANSON:  ONE OF THEM I WOULD CHARACTERIZE

16   AMBIVALENT ABOUT A BOND, DOES NOT OPPOSE IT IF THE COURT IS

17   INCLINED TO GRANT ONE.

18         THE COURT:  OKAY.

19         MR. SWANSON:  THE OTHER IS OPPOSED TO ANY RELEASE

20   FOR MS. JONES AT THIS TIME.

21         THE COURT:  ALL RIGHT.  DOES THAT VICTIM FEAR FOR

22   HER SAFETY AT THE HANDS OF MS. JONES?

23         MR. SWANSON:  I THINK SHE HAS A GENERALIZED FEAR AS

24   A RESULT OF THIS EXPERIENCE.  IN ALL CANDOR I DON'T KNOW THAT

25   IT'S TIED TO ANY ONE PERSON, BUT GIVEN THE NATURE OF THIS

1    OFFENSE AND WHAT THEY ENDURED, SHE'S FEARFUL OF, FRANKLY,

2    JUST ABOUT EVERYBODY.

3            THE COURT:  ALL RIGHT.  AND I CAN APPRECIATE THAT.

4    MR. BECK.

5            MR. BECK:  OBVIOUSLY WE'VE MADE -- I'M -- I'VE NOT

6    CONTACTED THE VICTIMS DIRECTLY.  I CAN ADVISE THE COURT THAT

7    AT THE CLOSE OF THE LAST HEARING THERE WAS CONTACT BETWEEN

8    THE PARENTS, AND THAT COMMUNICATION INVOLVED APOLOGIES,

9    HEARTFELT CONCERN FOR THE WELL-BEING OF BOTH THE YOUNG WOMEN

10   INVOLVED HERE.  AND AS WAS REPRESENTED TO ME, DESIRE BY THE

11   FATHER -- APPARENTLY THE MOTHER OF ONE OF THE TWO GIRLS HAS

12   PASSED AND SO SHE RESIDES WITH HER FATHER.  A SINGLE FATHER,

13   AND HE ADVISED MR. WOODLEY THAT HE DID NOT SEEK ADDITIONAL

14   PUNISHMENT OR INCARCERATION FOR MS. JONES AND, IN FACT, THE

15   FAMILIES DID, AT THE END OF THEIR CONVERSATION, PRAY

16   TOGETHER.

17           THE COURT:  WHERE WAS THAT?

18           MR. BECK:  THAT WAS AT THE CLOSE OF THE LAST

19   HEARING.

20           THE COURT:  OUTSIDE?

21           MR. BECK:  OUTSIDE, YES.

22           THE COURT:  ARE YOU AWARE OF THAT, MR. SWANSON?

23           MR. SWANSON:  I AM, YES.

24           THE COURT:  OKAY.  ALL RIGHT.  WELL, I'M LOOKING AT

25   THE ORIGINAL PRE-SENTENCE REPORT, AND OBVIOUSLY MS. JONES HAS

1   A RATHER SIGNIFICANT JUVENILE RECORD, AND THEN SHE HAS TWO

2   ADULT -- IN 2011, A DOMESTIC VIOLENCE BATTERIES WHICH WAS

3   DROPPED.  DOES ANYBODY KNOW THE CIRCUMSTANCES OF THAT?

4         MR. BECK:  THE VICTIM OF THAT ALLEGED BATTERY WAS

5   D-MAN.

6         THE COURT:  REALLY?

7         MR. BECK:  YES, YOUR HONOR.

8         THE COURT:  BUT THEN I NOTICED IN JUNE OF LAST YEAR

9   SHE HAS ANOTHER DOMESTIC BATTERY AND AN ARRAIGNMENT WAS

10  SCHEDULED FOR AUGUST OF LAST YEAR.  IS THAT CASE STILL

11  PENDING, MR. BECK?

12        MR. BECK:  IT IS NOT.

13        THE COURT:  WHAT HAPPENED?

14        MR. BECK:  IT'S BEEN DISMISSED.

15        THE COURT:  WHO WAS THE ALLEGED VICTIM IN THAT

16  CASE?

17        MR. BECK:  THE SAME GENTLEMAN.

18        THE COURT:  THE SAME GENTLEMAN.  ALL RIGHT.  ALL

19  RIGHT.  MR. BECK, I'LL HEAR YOU, WHAT DO YOU SAY?

20        MR. BECK:  YOUR HONOR --

21        THE COURT:  BEFORE I START, PRETRIAL SERVICES ALSO

22  RAN A CRIMINAL BACKGROUND CHECK ON THE MOTHER.  IT'S RATHER

23  EXTENSIVE.  SHE HAD A BATTERY -- THE LAST ENTRY IS BATTERY IN

24  2008.  SHE WENT TO TRIAL AND WAS ACQUITTED.  WHO WAS THE

25  ALLEGED VICTIM IN THAT CASE, DO YOU KNOW?

1    MR. BECK:  I DON'T KNOW THE ANSWER TO THAT.

2    THE COURT:  ALL RIGHT.  GO AHEAD, MR. BECK.

3    MR. BECK:  AT THE CLOSE -- OR DURING THE SIDEBAR

4  LAST WEEK IN THIS MATTER, YOUR HONOR, THE COURT DIRECTED THE

5  GOVERNMENT TO CONTACT THE VICTIM'S COURT -- DIRECTED ME TO

6  LOOK INTO POSSIBLE FACILITIES AND TREATMENTS THAT MAY BE

7  AVAILABLE FOR MS. JONES.  I HAVE DONE THAT.

8    YESTERDAY I HAD A FAIRLY EXTENSIVE CONVERSATION

9  WITH A GENTLEMAN BY THE NAME OF SEAN KING WHO IS THE

10  ADMINISTRATOR WITH SOLUTIONS.  SOLUTIONS IS A PINELLAS BASED

11  TREATMENT PROVIDER.  THEY ARE APPARENTLY CONTRACTED WITH THE

12  MIDDLE DISTRICT OF FLORIDA.  THEY HAVE AVAILABLE WITHIN THEIR

13  SYSTEM THE ABILITY TO PROVIDE BOTH INPATIENT AND OUTPATIENT

14  CARE FOR MS. JONES OR ANY OF THEIR CLIENTS.  WE KNOW AT THE

15  SENTENCING LAST WEEK THAT DOC MCCLEAN TESTIFIED THAT SHE

16  BELIEVED BECAUSE OF THE NATURE OF THE MENTAL, EMOTIONAL,

17  PHYSICAL ABUSE THAT KEOSHA HAD BEEN SUBJECTED TO THAT, IN HER

18  OPINION, INPATIENT CARE WAS AN APPROPRIATE TRANSITIONAL PHASE

19  FOR HER AND SOLUTIONS PROVIDES THAT.  SOLUTIONS WORKS WITH

20  THE PRETRIAL SERVICES AND/OR THE PROBATION OFFICE TO

21  COORDINATE THOSE SERVICES.

22    THE ONLY SERVICE THAT THEY INDICATED THAT THEY DO

23  NOT HAVE AT THIS TIME IS SEX OFFENDER TREATMENT.  HOWEVER,

24  THEY ARE FAMILIAR WITH ONE OR TWO PROVIDERS IN PINELLAS

25  COUNTY THAT CAN COORDINATE THAT TREATMENT, IF THE COURT SO

1    ORDERS, MOVING FORWARD.

2          I DID NOT SPEAK TO GLORIA WOODLEY ABOUT HER PRIOR

3    OFFENSES, OF COURSE, I'VE GOTTEN TO KNOW GLORIA AND GARY

4    WOODLEY VERY, VERY WELL, I THINK, OVER THE PAST SIX MONTHS

5    THAT I HAVE BEEN WORKING WITH KEOSHA.  GARY WOODLEY, AS THE

6    COURT RECOGNIZED, IS A VERY SOLID MEMBER OF THE COMMUNITY.

7    HE HAS EXPERIENCE AND TRAINING WORKING WITH JUVENILE JUSTICE

8    OFFENDERS, AND HE IS -- BOTH GLORIA AND GARY ARE NOW WELL

9    EMPLOYED.

10          GLORIA WORKS AT ORANGE BLOSSOM CATERING IN SAINT

11   PETERSBURG, AND THROUGH HER SUPERVISORS AND OWNERS OF ORANGE

12   BLOSSOM CATERING THEY HAVE OFFERED TO ALSO EMPLOY KEOSHA, IF

13   THE COURT DEEMS ON BOND OR CONDITIONAL BOND THAT SHE BE

14   EMPLOYED.  THAT IS AVAILABLE TO HER.

15          WE ALSO UNDERSTAND AND WE AGREE MOVING FORWARD THAT

16   THERE'S A TRANSITIONAL PERIOD THAT IS APPROPRIATE FOR KEOSHA,

17   THE ELECTRONIC MONITORING.  THE FAMILY IS PREPARED TO DO

18   THAT.  THE CURFEWS, BOTH KEOSHA AND THE FAMILY ARE PREPARED

19   TO WORK WITH THE COURT AS NECESSARY.  THE NECESSITY TO TRAVEL

20   TO COUNSELING, OR FOR WORK, OR FOR VOCATIONAL TRAINING CAN

21   ALL BE COORDINATED.

22          YOUR HONOR, I THINK THAT THERE ARE TWO THINGS THAT

23   ARE VERY SIGNIFICANT IN THIS CASE.  THE FIRST IS THAT DESPITE

24   THE FACT THAT KEOSHA JONES HAS PLEAD GUILTY TO AND HAS BEEN

25   ADJUDICATED GUILTY OF THE UNDERLYING CHARGES HERE, WAS THE

1   UNDERSTANDING THAT AROSE FROM THE TESTIMONY AT LAST WEEK'S

2   SENTENCING.  THAT IS THAT, IN FACT, KEOSHA JONES WAS, FOR SIX

3   YEARS, A VICTIM OF SEX TRAFFICKING, AND THAT DESPITE HER

4   HAVING BEEN GUILTY OF THE CHARGES HERE, HER ACTIONS TOWARD

5   THE TWO GIRLS THAT ARE THE SUBJECT OF THIS -- OF THESE

6   CHARGES, WAS NEVER HARMFUL, WAS NEVER MALICIOUS, AND THAT, IN

7   FACT, AT THE END OR CLOSE OF THE TWO-WEEK PERIOD THAT THEY

8   WERE TOGETHER, SHE ACTUALLY PROVIDED THEM THE MECHANISM AND

9   THE MEANS TO LEAVE THE CIRCUMSTANCES THAT THEY HAD BEEN IN

10  TOGETHER.  AND THEN ULTIMATELY, AND I'M NOT SURE WE ADVISED

11  THE COURT OF THIS LAST WEEK, WHEN MS. JONES -- IT IS IN THE

12  SENTENCING MEMORANDUM, WHEN MS. JONES RECOGNIZED THROUGH A

13  FLYER THAT WAS SEEN IN A CONVENIENCE STORE THE TRUE AGE OF

14  THESE TWO GIRLS, SHE PERSONALLY TOOK IT UPON HERSELF TO

15  CONTACT LAW ENFORCEMENT TO ADVISE LAW ENFORCEMENT OF THE

16  WHEREABOUTS OF THE GIRLS SO THAT THEY COULD, IN FACT, BE

17  RETURNED HOME AND WAS COMPLETELY CANDID IN GIVING HER NAME TO

18  LAW ENFORCEMENT TO ALLOW THEM TO ASSIST IN RECOVERING THE

19  GIRLS.

20          SHE HAS NOT SOUGHT BOND IN THIS MATTER TO DATE

21  BECAUSE IT WAS HER DESIRE TO DEMONSTRATE TO THE COURT THAT

22  SHE UNDERSTOOD THAT SHE HAD COMMITTED A CRIME AND THAT

23  PUNISHMENT WAS APPROPRIATE.  SO SHE HAS NOW SPENT SIX MONTHS

24  IN CUSTODY.

25          SHE HAS, WHILE IN CUSTODY, AFFORDED HERSELF THE

1    BENEFITS OF ANY AND ALL PROGRAMS THAT WERE AVAILABLE TO HER

2    THERE.  SHE HAS BEEN ATTENDING THE AA AND NA MEETINGS FOR SIX

3    MONTHS, AND HAS REMAINED ALCOHOL AND DRUG FREE DURING THAT

4    PERIOD OF TIME.

5             YOUR HONOR, WE HAVE ALSO -- CAN REPRESENT TO THE

6    COURT THAT SHE HAS BEEN FULLY COOPERATIVE WITH THE GOVERNMENT

7    SINCE HER ARREST.  SHE HAS PROFFERED ON A NUMBER OF OCCASIONS

8    AND PROFFERED TRUTHFULLY.  AND HER ASSISTANCE HAS LED TO THE

9    ARREST AND THE PROSECUTION OF ONE OF THE "JOHNS" IN THE STATE

10   COURT'S, AND WE ANTICIPATE WILL SOON LEAD TO THE INDICTMENT

11   OF SOMEONE, IF NOT MULTIPLE INDIVIDUALS, OF THE GANG THAT

12   TERRORIZED HER AND THESE TWO YOUNG GIRLS OVER THE PAST NUMBER

13   OF YEARS.

14            SO WE DO BELIEVE THAT THERE ARE CONDITIONS OF

15   RELEASE THAT CAN BE FASHIONED.  WE BELIEVE THAT THOSE

16   CONDITIONS OF RELEASE WILL NOT ONLY PROTECT THE COMMUNITY AND

17   WILL INSURE THAT SHE APPEARS AT ALL SUBSEQUENT HEARINGS, BUT

18   WE ALSO BELIEVE THAT THOSE CONDITIONS WILL GO A LONG WAY IN

19   AFFORDING HER -- AFFORDING MS. JONES THE OPPORTUNITY TO DEAL

20   WITH THE ABUSE AND THE TRAUMA THAT SHE HAS SUFFERED OVER THE

21   PAST NUMBER OF YEARS, AND WILL AFFORD HER THE OPPORTUNITY TO

22   BECOME THE KIND OF CITIZEN THAT WE ALL HOPE THAT SHE CAN

23   BECOME, AND FRANKLY, BELIEVE THAT SHE CAN BECOME.

24            SO WE ARE ASKING THE COURT TO AWARD -- TO ENTER AN

25   ORDER GRANTING HER PRETRIAL RELEASE -- OR PRESENTENCING

1   RELEASE, WITH CONDITIONS, AND THOSE CONDITIONS ARE -- WE ARE

2   PREPARED TO MEET ANY AND ALL CONDITIONS THE COURT THINKS ARE

3   APPROPRIATE IN THIS MATTER.

4        THE ONE THING THAT MR. SWANSON AND I DISCUSSED

5   YESTERDAY WAS THE -- AN ISSUE OF, AS HE DESCRIBED IT, "SKINS

6   IN THE GAME" ON BEHALF OF THE WOODLEY'S.  I CAN TELL THE

7   COURT THAT WHILE THE COURT -- WHILE THE WOODLEY'S ARE

8   PREPARED TO DO ANYTHING THE COURT ASKS THEM AT THE PRESENT

9   TIME, THEY DO NOT HAVE SIGNIFICANT CASH RESOURCES THAT WOULD

10  NECESSARILY AFFORD THEM TO -- AFFORD THEM THE OPPORTUNITY TO

11  UTILIZE A PROFESSIONAL SURETY IN THIS MATTER.  AND AS TO THE

12  HOME THAT'S BEEN DESCRIBED IN THE PRE-SENTENCE REPORT,

13  APPARENTLY THAT IS A RELEASE OPTION.  FROM EQUITY TERMS I'M

14  NOT SURE THERE IS EQUITY IN THEIR HOUSE THAT WOULD AFFORD

15  THEM TO UTILIZE THAT TO CONVINCE THE COURT.

16       THE COURT:  ALL RIGHT.  THANK YOU.  MS. JONES,

17  ANYTHING YOU WOULD CARE TO SAY?

18       THE DEFENDANT:  NO, SIR.

19       THE COURT:  ALL RIGHT.  IF I RELEASE YOU TODAY, DO

20  I HAVE YOUR ASSURANCE YOU ARE ALWAYS GOING TO SHOW UP?

21       THE DEFENDANT:  YES, SIR.

22       THE COURT:  YOU'RE GOING TO STAY OUT OF TROUBLE?

23       THE DEFENDANT:  YES, SIR.

24       THE COURT:  ARE YOU GOING TO FOLLOW ALL THE TERMS

25  AND CONDITIONS I IMPOSE UPON YOU?

1          THE DEFENDANT:  YES, SIR.

2          THE COURT:  YOU REALIZE IF YOU DON'T I WILL

3    IMMEDIATELY ISSUE A WARRANT FOR YOUR ARREST, DO YOU

4    UNDERSTAND THAT?

5          THE DEFENDANT:  YES, SIR.

6          THE COURT:  THAT INCLUDES NO CONTACT WITH THESE TWO

7    YOUNG LADIES OR ANY OTHER GOVERNMENT WITNESS IN THIS CASE, DO

8    YOU UNDERSTAND THAT?

9          THE DEFENDANT:  YES, SIR.

10         THE COURT:  AND INCLUDES NO CONTACT WITH MINORS

11   UNDER THE AGE OF 18.  DO YOU HAVE ANY FAMILY MEMBERS UNDER

12   THE AGE OF 18?

13         THE DEFENDANT:  YES, SIR.

14         THE COURT:  WHO'S THAT?

15         THE DEFENDANT:  I HAVE A NIECE THAT'S SIX.  I HAVE

16   COUSINS THAT IS SIX, AND SEVEN AND FIVE, TWO AND A NEWBORN.

17         THE COURT:  ALL RIGHT.  DO YOU VISIT THEM OFTEN?

18         THE DEFENDANT:  YES, SIR.

19         THE COURT:  WHAT DO YOU SAY TO THAT, MR. BECK?

20         MR. BECK:  I THINK THAT THESE ARE SOME OF THE

21   RELATIVES THAT MS. WOODLEY TESTIFIED LAST WEEK THAT SHE HAD

22   BROUGHT TO THE JAIL TO ALLOW THEM TO SEE KEOSHA.  IT IS A

23   CLOSE KNIT FAMILY, YOUR HONOR, AND WE WOULD ASK THE COURT TO

24   MAKE AN EXCEPTION FOR COUSINS, NIECES, NEPHEWS.  I DO NOT

25   BELIEVE THAT IS A RISK NOR BELIEVE THAT ANYBODY IN THIS

1    FAMILY BELIEVES THEY ARE AT RISK.

2              THE COURT:  WHO'S CRYING BACK THERE?

3              MRS. WOODLEY:  IT'S THE AUNTY.

4              THE COURT:  I'M SORRY?

5              MR. BECK:  IT'S THE AUNTY.

6              THE COURT:  WHAT IS SHE UPSET ABOUT?  MR. WOODLEY,

7    MS. WOODLEY.

8              MR. WOODLEY:  YES, SIR.

9              THE COURT:  YOU HAVE THE RESOURCES TO -- FOR A

10   LANDLINE?

11             THE FATHER:  YES, SIR.

12             THE COURT:  MY FEELING RIGHT NOW, AND I STILL NEED

13   TO HEAR FROM THE GOVERNMENT, IS THAT I WOULD REQUIRE

14   MS. JONES AND BOTH OF YOU TO SIGN AN UNSECURED BOND IN THE

15   AMOUNT OF $50,000.  NOW, WHAT I WANT YOU TO UNDERSTAND IF FOR

16   SOME REASON SHE ABSCONDS, YOU ARE GOING TO BE ON THE HOOK FOR

17   $50,000 TO THE UNITED STATES GOVERNMENT, DO YOU UNDERSTAND

18   THAT?

19             MR. WOODLEY:  I DO, SIR.

20             THE COURT:  ARE YOU WILLING TO ACCEPT THAT

21   RESPONSIBILITY, MR. WOODLEY?

22             MR. WOODLEY:  YES, SIR.

23             THE COURT:  MS. WOODLEY?

24             MRS. WOODLEY:  YES, SIR.

25             THE COURT:  IF YOU WANT TO SEE ABOUT HER AUNT, GO

1    AHEAD.  MR. WOODLEY, YOU CAN HAVE A SEAT.  MR. WOODLEY.

2    MR. SWANSON.

3            MR. SWANSON:  THANK YOU, YOUR HONOR.  AS I WOULD

4    JUST LIKE TO NOTE FOR THE RECORD THAT THE GOVERNMENT HAS

5    SOME, I THINK, WELL-FOUNDED CONCERNS ABOUT A RELEASE FOR

6    MS. JONES AT THIS STAGE IN THE PROCEEDINGS.

7            AS THE COURT IS WELL AWARE, BY VIRTUE OF HER

8    CONVICTION HERE OF A CRIME OF MAXIMUM TERM OF LIFE, IT WOULD

9    BE THE STATUTE 3143 WOULD REQUIRE THAT SHE REMAIN IN CUSTODY

10   UNLESS THE COURT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT

11   SHE WAS NOT A RISK OF FLIGHT OR DANGER TO THE COMMUNITY.

12           THE COURT:  WELL, YOU KNOW YOU RAISE AN INTERESTING

13   POINT.  SHE HAS PLEAD GUILTY BUT I HAVEN'T SENTENCED HER,

14   RIGHT.

15           MR. SWANSON:  THAT'S RIGHT.

16           THE COURT:  BUT DOES THAT STATUTE STILL APPLY SINCE

17   I HAVE ADJUDGED HER TO BE GUILTY?

18           MR. SWANSON:  I BELIEVE IT DOES, YOUR HONOR.

19   3143(A)(2) SPEAKS OF RELEASE PENDING SENTENCE.

20           THE COURT:  I JUST FACED THIS ISSUE.

21           MR. SWANSON:  IN THE **MEISTER** CASE, YOUR HONOR?

22           THE COURT:  I SURE DID.

23           MR. BECK:  WE WOULD ACKNOWLEDGE IT DOES APPLY IN

24   THESE SET OF CIRCUMSTANCES.

25           THE COURT:  MS. KAISER SAID, "JUDGE, YOU DON'T HAVE

1    THE AUTHORITY."  CONTRARY TO NINE OTHER CIRCUITS, I SAID,

2    "YOU KNOW WHAT, I AGREE."  THE 11TH CIRCUIT SAID I WAS WRONG.

3    WHAT IS IT 43 --

4              MR. SWANSON:  43(A)(2), YOUR HONOR.

5              THE COURT:  IS THIS A CRIME OF VIOLENCE?

6              MR. SWANSON:  IT'S ACTUALLY NOT, YOUR HONOR,

7    BECAUSE IT'S A CONSPIRACY.  BUT IT IS A CRIME FOR WHICH THE

8    MAXIMUM PENALTY IS LIFE IN PRISON.  SO IT FALLS UNDER

9    3142(F)(1)(B).

10              THE COURT:  ALL RIGHT.  GO AHEAD.

11              MR. SWANSON:  IN LIGHT OF THAT PROVISION, YOUR

12    HONOR, TO ALLOW MS. JONES' RELEASE AT THIS POINT WOULD

13    REQUIRE A FINDING BY CLEAR AND CONVINCING EVIDENCE THAT SHE

14    IS NOT A FLIGHT RISK OR DANGER TO THE COMMUNITY, AND IT WOULD

15    HAVE TO BE CLEARLY SHOWN THAT THERE ARE EXCEPTIONAL REASONS

16    WHY HER DETENTION AT THIS POINT IS NOT APPROPRIATE.  MY

17    RESEARCH SHOWS THAT THE EXCEPTIONAL REASONS IS NOT A WELL

18    DEFINED TERM.

19              THE COURT:  TELL ME ABOUT IT.

20              MR. SWANSON:  I'M SORRY?

21              THE COURT:  TELL ME ABOUT IT.

22              MR. SWANSON:  WHAT HAS BEEN SAID ABOUT THAT VERY

23    FACT SPECIFIC, TALLY THE CIRCUMSTANCES OF THE EVALUATION AND

24    IS ULTIMATELY LEFT TO THE COURT'S DISCRETION.  I THINK SOME

25    FACTORS THAT MILITATE AGAINST A RELEASE OR AT LEAST WARRANT A

1    SIGNIFICANT NUMBER OF CONDITIONS IN THIS CASE ARE THAT MS.

2    JONES, NOT WITHSTANDING THE STRIDES SHE HAS MADE IN JAIL,

3    POSES A RISK OF CONTINUED CRIMINAL CONDUCT IF RELEASED.  JUST

4    TO RECAP SOME OF THE FACTS THAT BROUGHT US HERE TODAY.

5          THE GOVERNMENT OBTAINED A WARRANT FOR HER ARREST ON

6    A COMPLAINT THIS SUMMER.  IT TOOK ABOUT A WEEK TO APPREHEND

7    HER DURING THAT PERIOD OF TIME.  SHE FLED TO THE SOUTHERN

8    DISTRICT OF FLORIDA, ULTIMATELY CAME BACK AND SURRENDERED.

9    BUT THERE WAS -- THE FBI EXPENDED SIGNIFICANT RESOURCES TO

10   MAKE THAT HAPPEN.

11         AS A PRETRIAL SERVICES REPORT NOTES, OF THE PEOPLE

12   WITH WHOM SHE WOULD BE RESIDING ARE GONE FOR SIGNIFICANT

13   PERIODS OF THE DAY OUT WORKING.

14         THE REASON, IN LARGE PART, THAT MS. JONES IS HERE

15   IS THAT SHE FELL IN WITH THE WRONG CROWD BEFORE ALL OF THIS,

16   HAD A VERY SIGNIFICANT SUBSTANCE ABUSE PROBLEM, AND JUST LAST

17   WEEK THE DOCTOR ON THE STAND ACKNOWLEDGED THAT SHE COULDN'T

18   PREDICT WITH ANY CONFIDENCE WHAT HER RISK OF RECIDIVISM WAS.

19         SHE HAS, ACCORDING TO MR. BECK, MADE STRIDES WHILE

20   IN JAIL, HAS SOBERED UP.  I THINK ALL OF THAT, PARTICULARLY

21   GIVEN THE VERY HIGH STANDARD, RAISES CAUSE FOR CONCERN.  SHE

22   IS GOING TO FACE, AT SOME POINT IN HER SENTENCING, A

23   SIGNIFICANT GUIDELINES RANGE.  UP UNTIL THIS POINT THE

24   SENTENCING PROCEEDING HAS INVOLVED STATEMENTS BY MS. JONES

25   AND INDIVIDUALS ON HER BEHALF.  WHEN THE GOVERNMENT ADDRESSES

1   THE COURT AT THE SENTENCING, I'M PREPARED TO RELAY THE

2   PROFOUND AFFECT THAT THIS INCIDENT HAS HAD ON THE TWO MINOR

3   VICTIMS IN THIS CASE.

4         MR. BECK SAID THAT MS. JONES MEANT THEM NO HARM.

5   WELL, THE FACT OF THE MATTER IS SHE CONSPIRED TO EFFECT THEIR

6   SEX TRAFFICKING FOR TWO WEEKS AT BEST, AND THAT IS A

7   SIGNIFICANT HARM. SO I THINK ALL OF THOSE ARE VERY SERIOUS

8   CONSIDERATIONS THAT THE GOVERNMENT WILL URGE AT MS. JONES'

9   SENTENCING, WHENEVER THAT OCCURS.

10        SO IN LIGHT OF ALL THAT, YOUR HONOR, WE WOULD ASK

11   THAT MS. JONES BE ORDERED TO REMAIN IN JAIL PENDING HER

12   SENTENCING, OR IF RELEASED, BE SUBJECTED TO A SIGNIFICANT

13   NUMBER OF CONDITIONS.

14        THE COURT: ALL RIGHT. THANK YOU. MR. BECK.

15   MR. SWANSON, I WASN'T EVEN FOCUSING ON 3143 OR 3145 TO TELL

16   YOU THE TRUTH. SO I'M GLAD YOU BROUGHT IT TO MY ATTENTION.

17        MR. BECK: I'M SORRY, YOUR HONOR.

18        THE COURT: I APPRECIATE THAT.

19        MR. SWANSON: THANK YOU.

20        THE COURT: DO YOU UNDERSTAND -- HAVE YOU READ THE

21   11TH CIRCUIT ORDER --

22        MR. BECK: I'VE READ IT.

23        THE COURT: -- IN **MEISTER**. WHAT ARE THE

24   EXCEPTIONAL CIRCUMSTANCES?

25        MR. BECK: MR. SWANSON AND I DISCUSSED THAT AT

LENGTH YESTERDAY.  SO I THINK THAT MY RESPONSE WOULD BE THAT

IN THIS INSTANCE THE COURT HAD THE OPPORTUNITY TO OBSERVE AND

LISTEN TO THE TESTIMONY OF GARY WOODLEY, AND MR. WOODLEY'S

INFLUENCE AND IMPACT ON BOTH THE FAMILY AND HIS OPPORTUNITY

TO PROVIDE THE COURT WITH THE KIND OF CERTAINTY AND

SECURITIES THAT WOULD WARRANT RELEASE IN THIS CASE.

I, AS AN OFFICER OF THE COURT, UNDERSTAND THE

COURT'S CONCERNS, AND WOULD UNDERSTAND, AND CERTAINLY

UNDERSTAND THE GOVERNMENT'S CONCERNS, BUT I DO BELIEVE THAT

THE PRESENCE OF GARY WOODLEY -- LET ME STEP BACK A LITTLE

BIT.

THE COURT INDICATED IT HAD CONCERNS ABOUT GLORIA

WOODLEY'S PRIOR HISTORY.  I CAN TELL THE COURT, WITH THE

EXCEPTION OF THAT BATTERY, I THINK MOST OF THE CIRCUMSTANCES

WERE FINANCIAL.  SHE HAS WORKED FOR ORANGE BLOSSOM CATERING

SINCE ABOUT 2008 CONSISTENTLY AND IT APPEARS THAT THAT JOB

HAS ALLOWED HER TO BECOME MORE STABLE FINANCIALLY AND SO

WE'RE NOT SEEING THE SAME ISSUES.

MORE IMPORTANTLY, HOWEVER, OVER THE COURSE OF THE

LAST NUMBER OF YEARS, AND SINCE SHE MARRIED GARY WOODLEY OVER

THOSE TWO YEARS THEY HAVE BECOME MUCH MORE FINANCIALLY

STABLE.  THEY HAVE MOVED FROM A NEIGHBORHOOD THAT IS WROUGHT

WITH DANGER AND PERIL FOR YOUNG PEOPLE INTO A HOME AND

NEIGHBORHOOD THAT REMOVES KEOSHA JONES FROM THOSE SAME KINDS

OF CONCERNS.

1  THE ELECTRONIC MONITORING THE COURT CAN UTILIZE IN

2  THIS MATTER ASSURES SHE CAN REMAIN THERE, BUT FOR THE

3  EXCEPTION OF HER INVOLVEMENT IN THE TYPES OF THINGS THE COURT

4  WOULD NECESSARILY DEEM TO BE HEALTHY, WORKING, VOCATIONAL

5  REHAB, SOCIAL OR PSYCHOLOGICAL MENTAL COUNSELING, ALCOHOLICS

6  ANONYMOUS, NARCOTICS ANONYMOUS AND THE LIKE, AND ADD IN

7  RECOGNITION OF WHAT DR. MCCLEAN TESTIFIED TO IF, IN FACT,

8  THIS COURT AND/OR THE EVALUATOR FOR SOLUTIONS DEEMS INPATIENT

9  TREATMENT TO BE THE APPROPRIATE TRANSITIONAL STAGE TO ALLOW

10 FOR INPATIENT -- FOR WHATEVER PERIOD IS NECESSARY -- AS IS

11 DEEMED NECESSARY BY THE PEOPLE THAT CAN BEST ASSIST KEOSHA

12 JONES MOVING FORWARD ON, BEST ASSIST THIS COURT IN DEALING

13 WITH HER CONDUCT OVER THE PAST YEAR AND YEARS.  THANK YOU.

14 THE COURT:  ALL RIGHT.  WELL, BASED ON EVERYTHING I

15 NOTED TO DATE, I DON'T BELIEVE SHE IS A DANGER TO FLEE AT

16 THIS JUNCTURE.  AND I DON'T FIND THAT SHE POSES A THREAT TO

17 ANYONE.  WHAT IMPRESSES ME IS THAT SHE HAS NOT SOUGHT BOND.

18 I DID THIS ON MY OWN, AND SHE HAS BEEN INCARCERATED FOR SIX

19 MONTHS, AND SHE OBVIOUSLY KNOWS THAT SHOULD SHE NOT APPEAR AS

20 DIRECTED OR SHOULD SHE DO ANYTHING THAT WOULD POSE A DANGER

21 TO ANYONE, HER PRETRIAL RELEASE -- OR PRESENTENCING RELEASE

22 WOULD BE IMMEDIATELY REVOKED AND SHE WOULD BE REMANDED TO

23 CUSTODY.

24 BUT THE ISSUES I'M FOCUSING ON ARE TITLE 18, UNITED

25 STATES CODE, SECTION 3145(C), THAT IS, HAS IT BEEN CLEARLY

1  SHOWN THAT THERE ARE EXCEPTIONAL REASONS WHY HER DETENTION

2  WOULD NOT BE APPROPRIATE?

3         NOW, I READ THE 11TH CIRCUIT ORDER, AND I

4  RESPECTFULLY DISAGREE WITH THAT.  WHEN YOU LOOK AT THE

5  STRUCTURE, I DON'T KNOW HOW THEY CAN SAY THAT I'M THE GUY WHO

6  MAKES THE CALL, BUT THEY SAID IT.  I'M BOUND BY IT AND I HAVE

7  TO FOLLOW IT.  THE ONLY EXCEPTIONAL REASON -- AND I RECOGNIZE

8  THAT HER PARENTS ARE WILLING TO STAND BY HER, BUT IT SEEMS TO

9  ME THE ONLY EXCEPTIONAL REASON I CAN FIND HERE THAT IS

10 CLEARLY SHOWN BY THE RECORD IS THE FACT THAT SHE, IN A VERY

11 REAL SENSE, IS A VICTIM HERSELF.  IT'S UNQUESTIONED THAT FOR

12 FIVE YEARS OR THEREABOUTS SHE HERSELF WAS TERRORIZED BY --

13 WHAT'S THIS MAN'S NAME AGAIN?  WHATEVER.  WHAT'S HIS

14 NICKNAME?

15         MR. BECK:  THE NICKNAME IS "D-MAN," YOUR HONOR.

16         THE COURT:  VICTIMIZED BY THIS MAN AND WAS PLACED

17 IN THE SAME PRECARIOUS POSITION AS THESE OTHER TWO YOUNG

18 WOMEN, NOT JUST TO EXCUSE HER CRIMINAL ACTIVITIES, BUT WHAT I

19 THINK, THAT'S SOMETHING I CAN FOCUS ON IN TERMS OF

20 EXCEPTIONAL REASONS WHY I SHOULD RELEASE HER FROM CUSTODY.  I

21 AGREE WITH THE GOVERNMENT SHE NEEDS SOME STRINGENT

22 CONDITIONS.  ALL RIGHT.  SO I HAVE REVIEWED THE PRETRIAL

23 SERVICES REPORT.

24         FIRST OF ALL, I'M GOING TO REQUIRE HER AND

25 MR. & MRS. WOODLEY TO EXECUTE AN UNSECURED BOND IN THE SUM OF

1    $50,000.

2          I'M GOING TO REQUIRE HER TO UNDERGO BOTH MENTAL

3    HEALTH AND DRUG AND ALCOHOL EVALUATION, AND TO FOLLOW ANY

4    TREATMENT REGIMENT RECOMMENDED, AND THAT MAY INCLUDE A

5    RESIDENTIAL TREATMENT CENTER SUCH AS SOLUTIONS.

6          SHE IS TO REPORT TO PRETRIAL SERVICES AS DIRECTED.

7          SHE IS TO SUBMIT -- WELL, WHO SHOULD TAKE THE LEAD

8    HERE, PROBATION OR PRETRIAL SERVICES?

9          MS. JUNG:  IN THIS CASE THE PRETRIAL DEPARTMENT

10   WOULD TAKE OVER.

11         THE COURT:  OKAY.  THAT'S FINE.

12         MS. JUNG:  BUT I ALSO NEED TO LET YOU KNOW, YOUR

13   HONOR, THAT WHILE THERE HAS BEEN SOME TALK ABOUT INPATIENT

14   RESIDENTIAL TREATMENT, I JUST WANT THE COURT TO KNOW THAT

15   PRETRIAL SERVICES HAS NO ABILITY TO PROVIDE THAT FOR HER.  WE

16   ONLY HAVE ACCESS TO OUTPATIENT TREATMENT.  I KNOW I DISCUSSED

17   WITH HER FATHER ABOUT -- HE WAS LOOKING INTO HIS INSURANCE TO

18   SEE IF THEY HAD SOME ABILITY FOR RESIDENTIAL TREATMENT

19   THROUGH THEIR INSURANCE.  I DON'T KNOW WHAT THEY HAVE FOUND

20   OUT.  BUT I WANT THE COURT TO KNOW WE DO NOT HAVE, NOR WOULD

21   WE REFER HER OR DO ANY TYPE OF RESIDENTIAL TREATMENT WITH

22   HER.

23         THE COURT:  MR. WOODLEY, DO YOU HAVE THE INSURANCE?

24         THE FATHER:  YES, SIR.

25         THE COURT:  INSURANCE WILL COVER?

1          THE FATHER:  YES, SIR.

2          THE COURT:  YOU'RE SURE?

3          THE FATHER:  BASED ON MEDICAL NECESSITY, SIR, THERE

4   IS NO TIME FRAME FOR WHATEVER ASSISTANCE KEOSHA NEEDS.  IF

5   SHE NEEDS TO BE EVALUATED BY A MEDICAL DOCTOR TO DETERMINE

6   WHAT EXACTLY SHE NEEDS, AND IT WILL BE BASED ON -- MY

7   INSURANCE WOULD BE COVERED.

8          THE COURT:  ALL RIGHT.  WELL, I'LL AMEND THAT.  IF

9   INPATIENT TREATMENT IS RECOMMENDED, AND THAT IS THE BEST WAY

10  FOR HER TO GO, THAT'S WHAT WE WILL DO, ASSUMING MR. WOODLEY'S

11  INSURANCE PAYS FOR IT.  ALL RIGHT.

12         OF COURSE SHE IS TO SUBMIT TO SUBSTANCE ABUSE

13  TESTING AS DIRECTED BY HER PRETRIAL SERVICES OFFICER.

14         SHE IS NOT TO HAVE ANY INTERNET ACCESS, INCLUDING

15  BUT NOT LIMITED TO, THE SMART PHONES, COMPUTER TABLETS AND/OR

16  GAMING SYSTEMS.

17         I WANT HER TO -- SHE CAN -- IS THERE A GOOD

18  PROBABILITY SHE IS GOING TO BE ABLE TO FIND EMPLOYMENT,

19  MR. BECK?

20         MR. BECK:  IT'S MY UNDERSTANDING THAT THE OWNERS OF

21  ORANGE BLOSSOM CATERING HAVE ALREADY AGREED TO ALLOW HER TO

22  WORK THERE.  SHE HAS WORKED THERE IN THE PAST ON A BRIEF

23  PERIOD OF TIME, SO YES, YOUR HONOR, I BELIEVE SO.

24         THE COURT:  ALL RIGHT.  I WANT HER TO SEEK

25  EMPLOYMENT WITH THAT CATERING SERVICE, AND IF THEY HIRE HER,

1    FOR HER TO WORK THERE.

2              SHE IS TO REFRAIN FROM POSSESSING A FIREARM,

3    DESTRUCTIVE DEVICE OR OTHER DANGEROUS WEAPON.

4              SHE IS TO AVOID ANY CONTACT WITH THE ALLEGED

5    VICTIMS AND WITH POTENTIAL WITNESSES, AND AS WELL AS MINORS

6    UNDER THE AGE OF 18.

7              WITH REGARD TO HER IMMEDIATE FAMILY MEMBERS WHO ARE

8    UNDER THE AGE OF 18, SHE MAY HAVE CONTACT WITH THEM SO LONG

9    AS EITHER HER MOTHER OR STEPFATHER IS PRESENT.

10             ALL RIGHT.  I WANT HER TO BE PLACED ON ELECTRONIC

11   MONITORING.  SHE IS TO STAY AT HOME -- ASSUMING -- WELL,

12   UNLESS SHE GETS INTO AN IN-TREATMENT PROGRAM, BUT HER HOME

13   WILL BE HER JAIL.

14             NOW, IF SHE WORKS FOR THE CATERING SERVICE, WHAT

15   ARE THE HOURS?

16             MRS. WOODLEY:  MY HOURS START WITH 6:00 A.M. UNTIL

17   THE JOB IS FINISHED, AND NORMALLY I'M DONE AT 4:30 IN THE

18   AFTERNOON.

19             THE COURT:  I'M SORRY?

20             MRS. WOODLEY:  MY EMPLOYMENT, YOUR HONOR, STARTS AT

21   6:00 A.M., AND I'M NORMALLY DONE BY 4:30 IN THE EVENING.

22             THE COURT:  SO YOU START WORKING AT 6:00 A.M.?

23             MRS. WOODLEY:  YES, I DO, SIR.

24             THE COURT:  THAT'S WHEN YOU LEAVE THE HOUSE?

25             MRS. WOODLEY:  NO, I LEAVE AT 5:35.

1      THE COURT:  AND YOU GO IMMEDIATELY INTO WORK AND

2 STAY THERE THE REST OF THE DAY?

3      MRS. WOODLEY:  YES, I DO, SIR.

4      THE COURT:  WHAT TIME DO YOU NORMALLY GET HOME?

5      MRS. WOODLEY:  MY NORMAL HOURS I LEAVE NO LATER

6 THAN 3:30, 4:00 O'CLOCK.  IF I HAVE OVERLOAD, I JUST FINISH

7 THAT UP FOR THE DAY.

8      THE COURT:  WHAT'S AN OVERLOAD?

9      MRS. WOODLEY:  I'M HOME NO LATER THAN 3:30,

10 4:00 O'CLOCK, SIR.

11      THE COURT:  ALL RIGHT.  WELL, SHE IS TO STAY AT

12 HOME UNTIL HER EMPLOYMENT REQUIRES OTHERWISE.  WELL, LET'S DO

13 THIS, HER CURFEW WILL BE 5:30 A.M. TO 5:00 O'CLOCK P.M.

14      MR. BECK:  I THINK CURFEW WOULD BE 5:00 P.M. TO

15 5:30 A.M.

16      THE COURT:  I'M SORRY, 5:00 P.M. TO 5:30 A.M.  HAVE

17 I COVERED ALL THE BASES?

18      MR. BECK:  A COUPLE OF OTHER THINGS, YOUR HONOR.  I

19 THINK -- IN TALKING TO THE GOVERNMENT ABOUT THIS, I THINK SHE

20 IS NECESSARILY GOING TO HAVE TO REGISTER AS A SEX OFFENDER.

21      THE COURT:  THAT'S RIGHT.  SHE NEEDS TO REGISTER AS

22 A SEX OFFENDER AS SOON AS POSSIBLE.

23      MR. BECK:  THEN IN TERMS OF ANY COUNSELING THAT SHE

24 MIGHT RECEIVE, IF THAT IS NOT INPATIENT, I WOULD ASSUME THAT

25 SHE WOULD BE ABLE TO COORDINATE THAT.

UNITED STATES DISTRICT COURT

1          THE COURT:  TIME PERIOD, OF COURSE.  OF COURSE.

2          MR. BECK:  YES, YOUR HONOR.

3          THE COURT:  BY THE WAY, WHAT ARE YOUR WORK DAYS,

4  MS. WOODLEY?  WHAT DAYS WOULD SHE BE WORKING?

5          MRS. WOODLEY:  MONDAY THROUGH FRIDAY, WITH THE

6  EXCEPTION IF IT'S A BUSY WEEKEND, I WORK SATURDAY.

7          THE COURT:  ALL RIGHT.  THAT CURFEW WILL BE IN

8  PLACE MONDAY THROUGH FRIDAY.  ON THE WEEKENDS SHE SHALL STAY

9  AT -- DO YOU GO TO CHURCH, YOUNG LADY?

10          THE DEFENDANT:  I HAVEN'T, BUT I WANT TO START

11  GOING.

12          THE COURT:  ALL RIGHT.  SATURDAY AND SUNDAY SHE

13  STAYS AT HOME EXCEPT TO GO TO CHURCH.

14          MRS. WOODLEY:  YES, SIR.

15          THE COURT:  I WANT YOU TO COORDINATE THAT WITH YOUR

16  PRETRIAL SERVICES OFFICER, ALL RIGHT?

17          THE DEFENDANT:  OKAY.

18          THE COURT:  OR UNLESS THERE'S A SPECIFIC NEED FOR

19  HER AT WORK THEN YOU COORDINATE THAT WITH YOUR PRETRIAL

20  SERVICES OFFICER, DO YOU UNDERSTAND?

21          THE DEFENDANT:  YES, SIR.

22          THE COURT:  ALL RIGHT.  AND HER -- OBVIOUSLY HER

23  TRAVEL IS RESTRICTED TO THE MIDDLE DISTRICT OF FLORIDA.

24          ANY OTHER CONDITIONS RECOMMENDED BY THE GOVERNMENT?

25          MR. SWANSON:  JUST ONE OTHER THING, YOUR HONOR,

1    THAT IS, MR. WOODLEY BE DESIGNATED A THIRD-PARTY CUSTODIAN.

2            THE COURT:  ALL RIGHT.  MR. WOODLEY, DO YOU HAVE

3    ANY OBJECTION TO THAT?

4            MR. WOODLEY:  NO, SIR.

5            THE COURT:  DO WE HAVE THAT STANDARD ORDER, SUSAN?

6            MADAM CLERK:  YES, YOUR HONOR.

7            THE COURT:  I'LL ORDER THAT.  ANY OTHER

8    RECOMMENDATION FROM PRETRIAL OR UNITED STATES PROBATION?

9            MS. JUNG:  NO.  MY ONLY CLARIFICATION DO YOU WISH

10   TO HAVE THIS AS A REGULAR RADIO FREQUENCY MONITORING OR GPS

11   MONITORING?

12           THE COURT:  YOU TELL ME WHAT'S BEST.

13           MS. JUNG:  THEY HAVE THE OPTION TO HOOK UP TO THE

14   HOME TELEPHONE LINE.  THE DIFFERENCE WITH GPS, WE KNOW WHERE

15   SHE IS AT EVERY POINT OF THE DAY.  SO WHICHEVER ONE YOUR

16   HONOR DESIGNATES.

17           THE COURT:  THEN THAT'S THE BETTER ONE, ISN'T IT?

18           MS. JUNG:  IT IS BETTER.  IT IS MORE EXPENSIVE.

19           THE COURT:  HOW MUCH MORE EXPENSIVE?

20           MS. JUNG:  ABOUT DOUBLE.

21           THE COURT:  WHICH TRANSLATES TO WHAT?

22           MS. JUNG:  HONESTLY, I DON'T KNOW WHAT THE COST IS.

23   I DON'T NORMALLY SUPERVISE THOSE CASES.  I DON'T KNOW WHAT

24   THE COST IT.  WE DO A SLIDING SCALE WITH THE FAMILY.

25           THE COURT:  ALL RIGHT.  LET'S DO GPS.  ANYTHING

1    FROM PROBATION?

2            MS. SHROYER:  NO, YOUR HONOR.

3            THE COURT:  SUSAN, DO YOU HAVE EVERYTHING?

4            MADAM CLERK:  I THINK SO, YOUR HONOR.

5            THE COURT:  I WILL SET AN INTERIM STATUS CONFERENCE

6    ONLY, FOR THURSDAY, MARCH 13, AT 9:00 O'CLOCK.  THAT'S MY

7    REGULAR STATUS CONFERENCE DAYS FOR CRIMINAL CASES TO SEE

8    WHERE WE ARE WITH REGARD TO "D-MAN" AND HER COOPERATION WITH

9    THE GOVERNMENT.  MS. JONES NEED NOT BE HERE.  MS. JONES, DO

10   YOU HAVE ANY QUESTIONS?

11           THE DEFENDANT:  NO, SIR.

12           THE COURT:  IF YOU VIOLATE ANY OF THE TERMS AND

13   CONDITIONS THAT I HAVE JUST LAID OUT FOR YOU, THEN YOU HAVE

14   MY PROMISE THAT I WILL IMMEDIATELY REVOKE YOUR CONDITIONS OF

15   RELEASE AND I WILL IMMEDIATELY REMAND YOU TO THE CUSTODY OF

16   THE UNITED STATES MARSHAL SERVICE, AND I WILL IMMEDIATELY SET

17   YOUR CASE FOR SENTENCING.  DO YOU UNDERSTAND ME?

18           THE DEFENDANT:  YES, SIR.

19           THE COURT:  YOUR MOTHER, YOUR STEPFATHER HAVE GONE

20   TO GREAT LENGTHS TO HELP YOU OUT.  MR. BECK HAS DONE HIS

21   USUAL OUTSTANDING JOB.  SO DON'T DISAPPOINT THEM.  DO YOU

22   UNDERSTAND ME?

23           THE DEFENDANT:  YES, SIR.

24           THE COURT:  IF YOU DISAPPOINT ME, I'M GOING TO PUT

25   YOU IN JAIL.  DO YOU UNDERSTAND ME?

1          THE DEFENDANT:  YES, SIR.

2          THE COURT:  OKAY.  ALL RIGHT.  SUSAN, HOW LONG DO

3    YOU NEED?

4          MADAM CLERK:  I'LL BRING IT BACK THERE FOR YOU TO

5    SIGN.

6          THE COURT:  EVERYBODY JUST STAY HERE UNTIL

7    MS. SAYLOR DOES WHAT SHE HAS TO DO.  THANK YOU.

8              (WHICH WERE ALL THE PROCEEDINGS

9              HELD IN THE ABOVE-ENTITLED CAUSE.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

COUNTY OF HILLSBOROUGH )

                        ) SS.

STATE OF FLORIDA        )


I, MELISSA A. PIERSON, OFFICIAL COURT REPORTER, REGISTERED

PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

COURT FOR THE MIDDLE DISTRICT OF FLORIDA, DO HEREBY CERTIFY

THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS

AT THE TIME AND PLACE HEREINBEFORE SET FORTH; THAT THE SAME

WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY MEANS OF

COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER CERTIFY THAT

THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC

NOTES.



DATE: 3-14-14


S:/MELISSA A. PIERSON

MELISSA A. PIERSON, CA/CSR 12499

IL/CSR 084.003138, RPR

FEDERAL OFFICIAL COURT REPORTER