UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Tampa, Florida |
| | ) | |
| Plaintiff, | ) | No. 8:13-cr-442-T-26MAP |
| | ) | |
| vs. | ) | September 19, 2013 |
| | ) | |
| KEOSHA RENEE JONES, | ) | 11:00 a.m. |
| | ) | |
| Defendant. | ) | Courtroom 15B |

**TRANSCRIPT OF RE-ARRAIGNMENT HEARING**
BEFORE THE HONORABLE RICHARD A. LAZZARA
UNITED STATES SENIOR DISTRICT JUDGE

**GOVERNMENT COUNSEL:**

> **Joseph W. Swanson, Assistant U.S. Attorney**
> United States Attorney's Office
> 400 North Tampa Street, Suite 3200
> Tampa, Florida 33602
> (813) 274-6000

**DEFENSE COUNSEL:**

> **Kevin T. Beck, Esq.**
> Law Office of Kevin T. Beck
> 2153 First Avenue South
> St. Petersburg, Florida 33712
> (727) 204-3199

> *Official Court Reporter:*
>
> *Scott Gamertsfelder, RMR, FCRR*
> *801 North Florida Avenue*
> *Tampa, Florida 33602*
> *Telephone:  (813) 301-5898*

*(Proceedings reported by stenotype; Transcript produced by computer-aided transcription.)*

<u>**P R O C E E D I N G S**</u>

**September 19, 2013**                                    **10:58 a.m.**

                         - - -

          COURT SECURITY OFFICER:  All rise.

          This Honorable Court is now in session.

          THE COURT:  Madam Clerk, would you please call the case.

          THE COURTROOM DEPUTY:  Yes, your Honor.

          *United States of America versus Keosha Renee Jones*, Case No. 8:13-cr-442-T-26MAP.  Counsel, please state your appearances for the record.

          MR. SWANSON:  Good morning, your Honor.  Joseph Swanson appearing for the United States.

          MR. BECK:  Good morning, your Honor.  Kevin Beck on behalf of Keosha Renee Jones.  Keosha Renee Jones is to my right.

          THE COURT:  Miss Jones, would you please stand and be sworn by the clerk.

          THE COURTROOM DEPUTY:  Please raise your right hand.

          Do you solemnly swear the statements you give to the Court will be the truth, the whole truth, and nothing but the truth so help you God?

          THE DEFENDANT:  Yes, ma'am.

          THE COURT:  You are Keosha Renee Jones?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Miss Jones, it's my understanding you

3    are appearing before me this morning, first of all, to waive

4    your right to be indicted by a federal grand jury and to

5    instead proceed by way of an Information which was filed by

6    the United State Attorney's Office, accusing you of

7    committing a certain crime.

8          Am I correct in that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  It is further my understanding that

11    you will then plead guilty to that Information and your plea

12    of guilty is based upon a written plea agreement that you

13    have entered into with the United States government; is that

14    correct?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  All right.  Miss Jones, before we

17    begin I need to advise you of some very important facts.

18    During the course of this proceeding, I'll be asking you some

19    very, very important questions, the answers to which will

20    determine whether I will, in fact, accept your waiver of

21    indictment and your plea of guilty.

22          Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  I want to impress upon you in the

25    strongest possible way that should you be untruthful with me

1  in answering any of my questions that you would be committing

2  a separate crime which we call perjury or making a false

3  statement.

4             Do you understand that?

5             THE DEFENDANT:  Yes, sir.

6             THE COURT:  Miss Jones, if you do that this

7  morning, you could be charged, prosecuted, convicted, and

8  sentenced in a separate criminal proceeding; and during the

9  course of that separate criminal proceeding, any false

10 statement you make to me this morning would be used against

11 you.

12            Do you understand that?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  Miss Jones, do I have your assurance

15 that you will answer each and every one of my questions

16 truthfully and completely?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Second, it's very important that you

19 and I communicate here this morning, that you understand my

20 questions, that I understand your answers and that you have a

21 good sense of what's taking place here; that is, you are not

22 confused about anything.

23            Do you understand that?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  Do I have your assurance that if at

1   any time you do not understand one of my questions or that if

2   at any time you are just confused about what's taking place

3   that you will immediately stop me and let me know that fact?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Otherwise, Miss Jones, I will assume,

6   quite reasonably, that you are fully and completely

7   understanding each and every one of my questions and that you

8   are fully and completely comprehending what is taking place

9   here.

10          Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Finally, I feel confident saying that

13  prior to this proceeding you had an opportunity to meet with

14  your lawyer, Mr. Beck, to review and discuss with him the

15  waiver of indictment, the Information, what evidence the

16  government may have to convict you of this particular

17  offense, to discuss with him what options you may have and to

18  otherwise seek out his counsel and advice.

19          Am I correct in that assumption?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  I want you to understand that you

22  continue to enjoy the right during the course of this

23  proceeding to consult with Mr. Beck so that if you need to do

24  that, all you need to do is let me know that fact.  I'll stop

25  the proceedings, and I'll let you confer as long as you feel

1  necessary.  Fair enough?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  What is your full name?

4          THE DEFENDANT:  Keosha Renee Jones.

5          THE COURT:  Is that your true name?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  How old are you?

8          THE DEFENDANT:  Twenty-one.

9          THE COURT:  How far did you go in school?

10         THE DEFENDANT:  The 10th grade.

11         THE COURT:  After you left the 10th grade, did you

12 have any further educational, vocational, or technical

13 training?

14         THE DEFENDANT:  No, sir.

15         THE COURT:  All right.  Did you ever obtain your

16 GED?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  What is it that you do for your

19 regular profession or occupation?

20         THE DEFENDANT:  I'm unemployed.

21         THE COURT:  Have you ever been employed?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  What did you do?

24         THE DEFENDANT:  I was employed at Arby's and

25 Waffle House and Bakery when I was 15, 16.

1          THE COURT:  So you were in the food industry?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  All right.  Are you married?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Do you have any children?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Do you read, write, and understand the

8    English language?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Have you ever been treated for any

11   type of mental illness or addiction to narcotic drugs of any

12   kind?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Tell me about them.

15          THE DEFENDANT:  I was evaluated by a psychologist

16   and diagnosed with Posttraumatic Stress Disorder.

17          THE COURT:  What's the matter, Mr. Beck?

18          MR. BECK:  I think some of this is possibly

19   subject to both HIPAA as well as attorney product privilege.

20          THE COURT:  I'm sorry.  I appreciate that,

21   Mr. Beck, but I'm required under Rule 11 to make inquiry with

22   regard to any past problems she may have had with mental

23   health or anything like that.  I don't know that HIPAA

24   precludes me from asking that question.  I just want to

25   know --

 1              MR. BECK:  I apologize, your Honor.  My concern is

 2     that this evaluation that she is referring to, I believe, is

 3     contemporaneous with this particular charge.

 4              THE COURT:  That you --

 5              MR. BECK:  Yes, your Honor.

 6              THE COURT:  Well, I understand that.  And if there

 7     is mitigation later on, okay, but I need to make sure she

 8     knows what she is doing here today.

 9              So you were evaluated by a psychologist?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  And that psychologist gave you some

12     kind of diagnosis?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  Are you taking any medication as a

15     result of that diagnosis?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  All right.  Are you still consulting

18     with any mental health specialist at the present time?

19              THE DEFENDANT:  No, sir.

20              THE COURT:  Okay.  As you sit there now, are you

21     currently under the influence of any drug, medication, or

22     alcoholic beverage of any kind?

23              THE DEFENDANT:  No, sir.

24              THE COURT:  Is your mind clear this morning?

25              THE DEFENDANT:  Yes, sir.

1          THE COURT:  Are you thinking appropriately?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Tell me where you are.

4          THE DEFENDANT:  In the courtroom.

5          THE COURT:  Why are you here?

6          THE DEFENDANT:  For a plea hearing.

7          THE COURT:  And I take it, then, you fully and

8  completely understand the significance of the importance of

9  this proceeding and how it will affect your future?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Other than Mr. Beck, have you

12  consulted with any other lawyer in this case?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  Are you a United States citizen?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Does she have a copy of the plea and

17  executed waiver of indictment in front of her, Mr. Beck?

18         MR. BECK:  She has the information in the plea

19  agreement, your Honor.  I'll obtain the waiver.

20         THE COURT:  Do you have the original?  Does the

21  government have the original?  Mr. Swanson?

22         MR. SWANSON:  I should, your Honor.  The original

23  was probably sent over to the Clerk's Office with the --

24         THE COURT:  I thought you would have imaged that

25  from your office.

1           Do me a favor, Mr. Militello.  Would you please

2    hand her -- I'm going to hand her this document called Waiver

3    of Indictment.  I believe it's in Docket 2 of the court file.

4    It's where I obtained it from.

5           Will you hand it to her?

6           COURT SECURITY OFFICER:  Yes, sir.

7           (*Document tendered.*)

8           THE COURT:  Take a look at that document, please,

9    Miss Jones.  Is that your signature on that document?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Mr. Beck, is that your signature?

12          MR. BECK:  It is, your Honor.

13          THE COURT:  So you are telling me what you are

14   looking at now is an accurate copy of the Waiver of

15   Indictment you signed in this case as it's been filed in the

16   court file?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Mr. Militello, if I could have it

19   back.

20          Before you signed that document, did you have

21   sufficient time to sit down with Mr. Beck and to review and

22   to discuss with him in detail what rights you have and what

23   rights you are giving up by executing this document?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Do you need to spend any more time

1  discussing that waiver form with him before we proceed?

2            THE DEFENDANT:  No, sir.

3            THE COURT:  As you sit there now, do you need to

4  discuss -- and do you have any questions you feel like you

5  need to ask of me with regard to this Waiver of Indictment

6  form before we proceed?

7            THE DEFENDANT:  No, sir.

8            THE COURT:  All right.  Has anyone, including your

9  lawyer or a representative of the government, made you any

10 promises to make you waive your right to be indicted by a

11 federal grand jury?

12           THE DEFENDANT:  No, sir.

13           THE COURT:  Has anyone, including your lawyer or a

14 representative of the government, threatened or coerced you

15 or a family member to make you waive your right to be

16 indicted by a federal grand jury?

17           THE DEFENDANT:  No, sir.

18           THE COURT:  Are you doing so freely, voluntarily,

19 knowingly, and intelligently because it's what you want to do

20 and for no other reason?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  I want to make sure you understand.

23           Under the federal Constitution, under that part we

24 call the Bill of Rights -- you've heard of that before?

25           THE DEFENDANT:  No, sir.

1          THE COURT:  You never heard of the first ten

2   Amendments to the United States Constitution?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Well, there is an amendment there that

5   gives every United States citizen certain rights, and one of

6   the rights is to have an independent body of people we call a

7   federal grand jury hear evidence, hear testimony, and make an

8   independent objective determination of whether a person

9   should or should not be charged with a federal criminal

10  offense.

11         Do you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  By executing this document, you are

14  waiving that right to have a federal grand jury independently

15  determine whether you should be charged with a crime, and

16  what you are saying is you will proceed to allow the United

17  State Attorney's Office to make the determination whether you

18  should be charged with a crime, and they obviously have done

19  that by filing this Information.

20         Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  All right.  I'm going to find that she

23  is freely, voluntarily, knowingly, and intelligently waiving

24  her right to be indicted by a federal grand jury.

25         I will execute the waiver document, and we will

1    have this imaged in the court file.

2           Now, I now have in front of me, Miss Jones, a

3    23-page document that appears at Docket 12 of the court file.

4    I may have been wrong.  The document we were just talked

5    about is Docket 10 in the court file.

6           Now, I now have in front of me a 23-page document

7    filed at Docket 12 in the court file, and it appears to be

8    your written plea agreement with the United States government.

9           Do you have an executed copy in front of you

10   there, Miss Jones?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Go to Page 23.  Is that your signature?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Are those your initials on the first

15   22 pages?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  Are you telling me under

18   oath, therefore, that you now have in front of you a fully

19   executed copy of your written plea agreement with the

20   United States government?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Miss Jones, before you executed that

23   document, did you have sufficient time to sit down with

24   Mr. Beck and to review and to discuss with him in detail each

25   and every provision of your plea agreement and how those

 1    provisions will affect you in this case?

 2              THE DEFENDANT:  Yes, sir.

 3              THE COURT:  Do you need to spend any more time

 4    discussing that provision with him before we proceed on?

 5              THE DEFENDANT:  No, sir.

 6              THE COURT:  As you sit there now, do you have any

 7    questions you feel like you need to ask me with regard to any

 8    provision of that plea agreement and how those provisions

 9    will affect you in this case?

10              THE DEFENDANT:  No, sir.

11              THE COURT:  Are you telling me under oath,

12    therefore, Miss Jones, that you fully and completely

13    understand each and every provision of your plea agreement

14    and how those provisions will affect you in your case?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  All right.  I want to discuss some of

17    them with you.

18              I want you to turn to Page 3.  There is a

19    paragraph called Mandatory Restitution to Victim of Offense

20    of Conviction.  If as a result of your criminal activity you

21    have caused harm or damage to another person, which we call a

22    victim under the law, I must order you to make restitution to

23    that victim or victims for whatever damage you may have

24    caused them.

25              Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  I have no discretion.  It's what we

3   call mandatory.  Do you understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, underneath that there is a

6   provision we call guideline sentence.  In that provision, the

7   United State Attorney's Office says to me that at the time I

8   sentence you, it will recommend that I sentence you within

9   the advisory guideline range I calculate applies to you.

10          Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Go down to page -- still on Page 3,

13   there is a fourth paragraph, another paragraph there that we

14   call Acceptance of Responsibility, three levels, and that

15   carries over to Page 4.

16          In that paragraph, the United States Attorney's

17   Office says to me that when I sentence you and in the event

18   no bad information comes to light about you, they will

19   recommend that when I calculate your advisory guideline range

20   that I give you what we call a two-level downward adjustment

21   when I determine what your total offense level is, and that

22   would be for acceptance of responsibility.

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And they also say to me that if you

1   otherwise qualify under the law at the time I sentence you,

2   they will file a motion and they will say, Judge, please

3   grant the motion; and when you determine her total offense

4   level, give her one extra level downward for acceptance of

5   responsibility.

6           Do you understand that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Now, I want you to understand,

9   Miss Jones, those are recommendations only.  They don't bind

10  me; and if I decline to follow one or more of those

11  recommendations, you can't withdraw your plea of guilty.

12          Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Staying on Page 4 and going over to

15  Page 5, Mr. Beck, I see she is attempting to cooperate with

16  the government.

17          MR. BECK:  Yes, your Honor.

18          THE COURT:  That paragraph says cooperation and

19  substantial assistance to be considered, and I want you to be

20  very clear on what the government is agreeing to do here.

21  The government is not saying that if you cooperate with them,

22  if you help them out, when I sentence you, they will, in

23  fact, file a motion for downward departure based on your

24  cooperation.  That's not what they are saying.

25          Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Here's what they are saying:  They

3  will evaluate whether any cooperation you give them qualifies

4  as substantial assistance under their policies, practices,

5  and procedures which would merit the filing of a motion for

6  downward departure based on substantial assistance.

7          Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  If we come to your sentencing and if

10  the government declines to file that motion, there is only

11  one limited circumstance that the law would allow me to

12  intervene on your behalf; and, that is, if you could prove to

13  me that the reason they didn't file that motion was based on

14  what we call an unconstitutional motive, such as your gender,

15  your race, your country of origin, things of that nature.

16          Do you understand that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  The same would apply to that motion

19  for one extra level downward for acceptance of responsibility.

20          Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Unless you could do that, the bottom

23  line is this:  It's their judgment call whether to file that

24  motion; and if they decline to file it because they determine

25  your cooperation did not rise to the level of substantial

1  assistance, you can't withdraw your plea of guilty.

2         Do you understand that?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  All right.  Anything to forfeit that

5  we know of, Mr. Swanson?

6         MR. SWANSON:  Nothing at this time, your Honor.

7         THE COURT:  Okay.  Is restitution going to be an

8  issue here?  Do you have any knowledge of that?

9         MR. SWANSON:  I don't have any specific figures at

10 this point, your Honor, but there are two identified victims;

11 and prior to the sentencing we will try to ascertain what, if

12 any, figures would apply in that circumstance.

13        THE COURT:  Okay.  Now, I want you to turn to

14 Page 16, Miss Jones.  There is a paragraph there.  It's a

15 very important paragraph because you are giving up a

16 substantial right, and it's called Waiver of Right to Appeal

17 Sentence.

18        In this paragraph, you agree, quite naturally,

19 that I have the jurisdiction and the authority to impose any

20 sentence on you up to the statutory maximum.  Then you

21 proceed to expressly waive your right to appeal any sentence

22 I impose on you on any ground, including the ground that I

23 may have made an error in determining what your guideline

24 range is under the United States Sentencing Guidelines.

25        Do you understand that?

1                THE DEFENDANT:  Yes, sir.

2                THE COURT:  And there are four limited exceptions

3    that will release you from this waiver, and I'll talk to you

4    about them in a moment.

5                But I want you to understand this.  Every federal

6    defendant, which is you, has an absolute right within 14 days

7    of being sentenced by a judge, by a federal judge, to file

8    with the Clerk of this Court a document we call a Notice of

9    Appeal.

10               When you do that, you start what we call the

11   direct appeal process in which you eventually argue to a

12   higher federal court -- in your case, it would be the

13   Eleventh Circuit Court of Appeals based in Atlanta, Georgia,

14   and you would argue to that higher federal court that I made

15   certain errors or mistakes in your case; and you would urge

16   them that if they agree with your arguments, to reverse what

17   I did and send the case back to me and to tell me to correct

18   my errors.

19               Do you understand that?

20               THE DEFENDANT:  Yes, sir.

21               THE COURT:  I'll give you an example of what I'm

22   talking about.  Under this paragraph you are giving up your

23   right to pursue that direct appeal.

24               Do you understand that?

25               THE DEFENDANT:  Yes, sir.

1          THE COURT:  Let me give you an example.

2          All right.  We just talked about acceptance of

3   responsibility.  Let's assume when I sentence you I determine

4   that you're not entitled to acceptance of responsibility, and

5   so I don't give you the downward adjustment.  And let's

6   assume I made an error; I should have given you the downward

7   adjustment.

8          Under this waiver provision, you are giving up

9   your right to appeal to the Eleventh Circuit Court of Appeals

10  and to ask them to correct my error.

11         Do you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Now, there are four limited exceptions

14  to this waiver provision.  You will be released from this

15  waiver provision, one, if I imposed a sentence that exceeds

16  the statutory maximum; two, if I impose a sentence that

17  exceeds the advisory guideline range; three, if I impose a

18  sentence that violates the Eighth Amendment to the

19  United States Constitution which prohibits the imposition of

20  cruel or unusual punishment.  Finally, if the government was

21  dissatisfied with my sentence and appealed me, you would be

22  released from this waiver provision.

23         Do you understand all that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  But the bottom line is this,

1   Miss Jones:  Absent one of those four exceptions, limited

2   exceptions, any sentence I impose upon you, you are going to

3   have to live with the rest of your life.

4          Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Now, are you entering into each and

7   every provision of your plea agreement, including the waiver

8   of appeal provision we just discussed, freely, voluntarily,

9   knowingly, and intelligently because it's what you want to do

10  and for no other reason?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And are you fully and completely

13  satisfied with each and every provision of your plea

14  agreement, including the waiver of appeal provision that your

15  attorney has negotiated on your behalf with the government?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Miss Jones, I want you to understand,

18  you don't have to come here and waive your right to be

19  indicted by a federal grand jury.  You can take your chances

20  with the grand jury.  And if they should charge you, you can

21  come in here and enter what we call an open plea to the

22  Court; that is, one without the benefit of a plea agreement

23  with the government.

24         Do you understand that?

25         THE DEFENDANT:  Yes, sir.

1              THE COURT:   However, it's my understanding you

2    feel it's in your best interest to waive your right to be

3    indicted by a grand jury, to plead guilty to an Information

4    filed by the United States Attorney's Office, and to plead

5    guilty based on a written plea agreement with the

6    United States government; is that correct?

7              THE DEFENDANT:   Yes, sir.

8              THE COURT:   Are you fully and completely satisfied

9    with the advice and representation that Mr. Beck gave you in

10   arriving at those important decisions?

11             THE DEFENDANT:   Yes, sir.

12             THE COURT:   Now, except for what's in your plea

13   agreement, has anyone, including your lawyer or a

14   representative of the government, made you any other type of

15   promise to make you plead guilty this morning?

16             THE DEFENDANT:   No, sir.

17             THE COURT:   Has anyone, including your lawyer or a

18   representative of the government, made you any promise as to

19   what specific sentence I will impose upon you?

20             THE DEFENDANT:   No, sir.

21             THE COURT:   Has anyone, including your lawyer or a

22   representative of the government, made you any promises as to

23   how much time you will actually have to serve in a federal

24   penitentiary?

25             THE DEFENDANT:   No, sir.

1          THE COURT:  Has anyone, including your lawyer or a

2    representative of the government, threatened or coerced you

3    or a family member to make you plead guilty this morning?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Mr. Beck, are you aware of any other

6    promises, inducements, threats, or coercion?

7          MR. BECK:  No, your Honor.

8          THE COURT:  Mr. Swanson?

9          MR. SWANSON:  No, your Honor.

10          THE COURT:  Miss Jones, prior to this morning, did

11    you, in fact, have an opportunity to meet with Mr. Beck to

12    review and to discuss with him the waiver of indictment

13    form --

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Hold on -- to review and to discuss

16    with him the information that's been filed against you by the

17    United State Attorney's Office --

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  -- to review and to discuss with him

20    what evidence the government may have to convict you of that

21    offense, to review and to discuss with him what options you

22    may have and to otherwise seek out his counsel and advice?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Are you fully and completely satisfied

25    with the advice and representation that he has given you in

1    your case?

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  Has he done everything you have asked

4    of him?

5                THE DEFENDANT:  Yes, sir.

6                THE COURT:  Miss Jones, have you ever been

7    convicted of a felony?

8                THE DEFENDANT:  No, sir.

9                THE COURT:  Well, you are pleading guilty to a

10   felony offense.  Under federal law, I must adjudicate you

11   guilty of that offense so that when you leave this courtroom,

12   you will leave as a convicted felon.  And as a convicted

13   felon, you will lose the following valuable rights:  You will

14   lose the right to vote, to hold public office, to serve on a

15   jury, and to possess any kind of a firearm.

16               Do you understand that?

17               THE DEFENDANT:  Yes, sir.

18               THE COURT:  Now, by pleading guilty to Count I,

19   you face a maximum sentence of life imprisonment, a fine of

20   $250,000, a term of supervised release of not more than five

21   years, and a special assessment of $100, which shall be due

22   on the date of your sentencing.

23               Do you understand that?

24               THE DEFENDANT:  Yes, sir.

25               THE COURT:  In your discussions with Mr. Beck, did

1    you also have an opportunity to discuss with him what we call

2    the United States Sentencing Guidelines?

3               THE DEFENDANT:  Yes, sir.

4               THE COURT:  Did you also discuss with him how

5    those guidelines may affect you in your case?

6               THE DEFENDANT:  Yes, sir.

7               THE COURT:  Did he give you an advisory guideline

8    range he thought might apply to you?

9               THE DEFENDANT:  Yes, sir.

10              THE COURT:  Nothing wrong with that, but we will

11   not know what your advisory guideline range is until the

12   United States Probation Office, at my distribution, prepares

13   an extensive document that we call a presentence report.

14              In that report they will detail for me the facts

15   and circumstances surrounding the crime you committed.  They

16   will tell me whether you have any prior criminal record.

17   They will let me know about your educational background, your

18   employment background, your family background.  They will

19   tell me about your financial situation.  They will tell me

20   many, many things about you.

21              A copy of the report will be given to Mr. Beck,

22   who will come and see you and review it with you.  If you

23   have -- oh, I'm sorry.  At the conclusion of report, the

24   Probation Office will make certain recommendations to me.

25   They will recommend to me what they believe your total

1    offense level should be, what your criminal history category

2    should be, and what your advisory guideline range should be.

3            Again, you will go over that report with Mr. Beck;

4    and if you have any objections as to what the Probation

5    Office is recommending to me, you will let them know that and

6    they will do their best to resolve your objections.  If they

7    cannot resolve your objections, I will resolve them at your

8    sentencing hearing.

9            Do you understand all that?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Only then will we know what your

12   advisory guideline range is.  And I want to let you know that

13   should my advisory guideline range I calculate differ from

14   the one Mr. Beck thought would apply to you, mine will

15   govern.  You can't withdraw your plea of guilty.

16           Do you understand that?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Now, Miss Jones, after we have gone

19   through that process, we are not through with sentencing.   I

20   must next consult with a specific federal statute in which

21   Congress has set out what we call statutory sentencing

22   factors which judges must consider before sentencing a

23   federal defendant.

24           Do you understand that?

25           THE DEFENDANT:  Yes, sir.

 1          THE COURT:  Some of those factors are as follows:

 2    Your history and characteristics, the nature and

 3    circumstances of the crime you committed, the need to protect

 4    the public, the need to promote respect for the law, the need

 5    to deter future criminal conduct.  There are others.  You

 6    will discuss them with Mr. Beck.

 7            Then, after I've calculated your advisory

 8    guideline range, I'm going to ask Mr. Beck to address the

 9    statutory factors and give me his opinion what he believes a

10    reasonable sentence is.  I will hear from you, if you wish to

11    address me, in mitigation of sentence.  If you want to bring

12    in family members or friends, people who know you, I'll

13    listen to them.

14            I'll then hear from the government.  I will then

15    consult the advisory sentencing guideline range.  I will then

16    consult the statutory sentencing factors; and it is my

17    obligation to impose a reasonable sentence, one that is

18    sufficient, but not greater than necessary to comply with the

19    statutory purposes of sentencing.

20            Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Now, I'm not saying this is going to

23    happen to you, but it has happened to other defendants I have

24    sentenced in the past; that is, the sentence I ultimately

25    impose varies from the advisory guideline range.  Sometimes

1  it has been a harsher sentence.  If that happens in your

2  case, you cannot withdraw your plea of agreement.

3          Do you understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, any term of imprisonment I impose

6  upon you, Miss Jones, by federal law, you must serve a

7  minimum of 85 percent of that sentence, because we no longer

8  have parole in the federal system.

9          Do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Additionally, any term of imprisonment

12  will be followed by a term of supervised release; and if you

13  violate the terms and conditions of your supervised release,

14  you could be returned to prison.

15          Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Miss Jones, you don't have to come

18  here this morning and tell me you are guilty.  You can say,

19  You know, Judge, I'm not guilty of this offense.  I want a

20  jury of 12 people, selected from this community by you, by

21  me, by my attorney and by the government attorney to hear the

22  evidence and testimony, to follow the law, and to make an

23  independent objective reasonable determination of whether I'm

24  guilty or not guilty.

25          Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  By pleading guilty, however, you will

3    give up the following valuable rights:  You will give up your

4    right to a trial by a jury or right to a trial before me.

5    You will give up your right to be represented by your lawyer

6    Mr. Beck at that trial.  You will give up your right to

7    require the government to prove your guilt to that jury

8    beyond a reasonable doubt or your guilt to me beyond a

9    reasonable doubt; and if it was a jury trial, the government

10   would have to convince all 12 people of your guilt beyond a

11   reasonable doubt; that is, their verdict would have to be

12   unanimous.

13          Do you understand that?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  You'll also give up your right to sit

16   where you are now, here in open court, and to confront on

17   cross-examine the government's witnesses as they testify

18   against you; that is, you are giving up your right to sit

19   where you are now at counsel table, accompanied by and next

20   to Mr. Beck, your lawyer; to enjoy an open and public trial

21   where people could come and go and observe the ongoing

22   proceedings; to look at the government's witnesses as they

23   testify against you; to listen to them as they testify

24   against you and to have Mr. Beck examine them on your behalf.

25          Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  You'll also give up your right to

3   bring in witnesses to testify on your behalf under the

4   subpoena power of this Court, if necessary, and for you to

5   take the stand and testify on your own behalf.

6          Do you understand that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  However, if you elected to proceed to

9   trial and if you further elected not to put on any evidence

10  or testimony, including your own, I would tell the jury they

11  could not consider that in any way in arriving at their

12  verdict.

13         Do you understand that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Now, do you have a copy of the

16  Information in front of you, Miss Jones?

17         Oh, one other thing.  By pleading guilty you are

18  also giving up your right to present any defenses you may

19  have to this charge as well as to raise issues seeking

20  dismissal of the Information and suppression of any evidence

21  or statements that may have been taken from you.

22         Do you understand that?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  All right.  Again, do you have the

25  Information there?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  In this Information, the acting United

3    States attorney charges that beginning on an unknown date,

4    but from at least in or about December of 2012 and continuing

5    to in or about January 2013, in Pinellas County, in the

6    Middle District of Florida, that you did combine, conspire,

7    and agree with other persons, known and unknown to the

8    United States, to knowingly recruit, entice, harbor,

9    transport, provide, obtain and maintain by any means a person

10   in and affecting interstate and foreign commerce, knowing and

11   in reckless disregard of the fact that such person had not

12   attained the age of 18 years and would be caused to engage in

13   a commercial sex act, in violation of federal statutory law.

14          That's what the United States Attorney's Office

15   has accused you of doing.  Before a jury of 12 people could

16   convict you of that offense or assuming I was trying the

17   case, nonjury, before I could convict you of that offense the

18   government would have to prove the following elements beyond

19   a reasonable doubt:  That you conspired with one or more

20   other persons to knowingly recruit, entice, harbor,

21   transport, provide, maintain or obtain by any means a person,

22   that you did so knowing or in reckless disregard of the fact

23   that the person had not attained the age of 18 years and

24   would be caused to engage in a commercial sex act and that

25   your acts were in or affected interstate or foreign commerce.

```
 1            Do you understand what the U.S. Attorney's Office
 2   has charged you with doing?
 3            THE DEFENDANT:  Yes, sir.
 4            THE COURT:  Do you understand what the United
 5   State Attorney's Office would have to prove beyond a
 6   reasonable doubt before you could be convicted of that
 7   offense?
 8            THE DEFENDANT:  Yes, sir.
 9            THE COURT:  How do you wish to plead?
10            THE DEFENDANT:  Excuse me?
11            THE COURT:  How do you wish to plead?
12            THE DEFENDANT:  Guilty.
13            THE COURT:  Are you pleading guilty because, in
14   fact, you committed the crime that the United States
15   Attorney's Office has charged you with doing in that
16   Information?
17            THE DEFENDANT:  Yes, sir.
18            THE COURT:  Now, I want you to go to your plea
19   agreement, again, Miss Jones.  Starting on Page 18 and
20   continuing through Page 22, the United State Attorney's
21   Office has set out in detail the facts it says it can prove
22   beyond a reasonable doubt to convict you of this offense.
23            Have you gone over those facts carefully and
24   completely with Mr. Beck?
25            THE DEFENDANT:  Yes, sir.
```

1              THE COURT:  Do those facts accurately and

2    correctly reflect what you did in this case?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you dispute or contest any of those

5    facts?

6              THE DEFENDANT:  No, sir.

7              THE COURT:  All right.  Miss Jones, have you

8    understood each and every one of my questions?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Have you been confused about anything?

11             THE DEFENDANT:  No, sir.

12             THE COURT:  Do you feel like you need to ask me

13   any type of question with regard to what's transpired here

14   this morning?

15             THE DEFENDANT:  No, sir.

16             THE COURT:  Do you feel like you need to take a

17   break and confer with Mr. Beck about anything before we

18   adjourn?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  One last question.

21             Are you reaffirming under oath that your answers

22   to each and every one of my questions were answered

23   completely and truthfully?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Mr. Beck, do you wish me to make any

1   further inquiry of your client?

2          MR. BECK:  No, your Honor.

3          THE COURT:  Mr. Swanson?

4          MR. SWANSON:  I would just note, your Honor, that

5   the plea agreement does contain on Page 11, in Paragraph 13,

6   the sex offender registration.

7          THE COURT:  Thank you.  Thank you.  Thank you.

8          That's going to have serious implications for you,

9   Miss Jones, for the rest of your life.

10          On Page 11 there is a paragraph called Sex

11   Offender Registration and Notification.  Basically, it says

12   that you are going to have to register and keep your

13   registration current in each of the following jurisdictions

14   with regard to being a sex offender:  The location of your

15   residence, location of your employment, or if you are a

16   student, the location of your school.

17          Do you understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And if you fail to register as a sex

20   offender as required by federal law, that's a separate

21   criminal offense for which you could be charged, convicted,

22   and sentenced.

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  All right.  I will, therefore, find

1   that this defendant has freely, voluntarily, and

2   intelligently entered a plea of guilty to Count I of the

3   Information, with full knowledge of the nature of the

4   offense, the consequences of her plea of guilty, including

5   the range of penalties that may be imposed and the various

6   rights she is giving up by pleading guilty.

7           I will further find based on her clear admission

8   of guilt and her acknowledgment of the accuracy and

9   correctness of the factual basis set forth in her plea

10  agreement that there is more than an adequate factual basis

11  to accept her plea of guilt.  I, therefore, accept her guilty

12  plea.

13          I will direct the United States Probation Office

14  to prepare a presentence report.

15          Sentencing date, Madam Clerk?

16          THE COURTROOM DEPUTY:  December 19th, 9:00.

17          THE COURT:  I will set sentencing for December

18  19th at 9 a.m.

19          I will remand her to the custody of the

20  United States Marshal Service pending sentence.

21          Anything else?

22          MR. SWANSON:  No, your Honor.

23          THE COURT:  Thank you everybody.

24          *(Proceedings adjourned at 11:34 a.m.)*

25                  - - -

**Re-Arraignment Hearing**
**In re:  USA v. Keosha Renee Jones; 8:13-cr-442-T-26MAP-1**
**September 19, 2013**

UNITED STATES DISTRICT COURT   )
                              )
MIDDLE DISTRICT OF FLORIDA    )


**C E R T I F I C A T E**

   I, Scott N. Gamertsfelder, Official Court Reporter for

the United States District Court, Middle District of Florida,

do hereby certify that pursuant to Section 753, Title 28,

United States Code that the foregoing is a true and correct

transcript from the stenographic notes taken in the

above-entitled matter by the undersigned and that the

transcript page format is in conformance with the regulations

of the Judicial Conference of the United States.


/S/Scott Gamertsfelder, RMR, FCRR
Official Court Reporter         Date: September 19, 2014

                        - - -